IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| VICTORIA MARKER, individually and on behalf of all others similarly situated, § § § § § Plaintiff, § § v. § § GATEWAY DIAGNOSTIC IMAGING, LLC, § § Defendant. § § § | Case No._____ |

## NOTICE OF REMOVAL

Defendant Gateway Diagnostic Imaging, LLC ("GDI" or "Defendant"), by and through its undersigned counsel, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, hereby provides notice of removal of this action filed by Plaintiff Victoria Marker ("Plaintiff") from the District Court of Tarrant County, Texas, Cause No. 352-337300-22, to the United States District Court for the Northern District of Texas, Fort Worth Division. In support of this Notice of Removal, GDI states as follows:

### JURISDICTION

1.  This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.  This Court is the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which the case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND AND TIMELINESS OF REMOVAL

3. On September 30, 2022, Plaintiff, on behalf of herself and purportedly on behalf of all other similarly situated individuals, filed Plaintiff's Class Action Petition & Jury Demand (the "Complaint") against GDI in the District Court of Tarrant County, Texas, in an action titled *Victoria Marker v. Gateway Diagnostic Imaging, LLC,* Cause No. 352-337300-22 (the "State Court Action").

4. Plaintiff commenced the State Court Action as a putative class action. In addition, she alleges claims under applicable Texas and federal law for (1) negligence; (2) negligence *per se* based on a violation of Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45; (3) negligence *per se* based on violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. § 160.102 *et seq.*; (4) violation of the Texas Medical Practice Act ("TMPA"), Tex. Occ. Code § 159.001 *et seq.*; (5) declaratory judgment; and (6) injunctive relief, and seeks, among other things, reimbursement for out-of-pocket costs, injunctive and equitable relief, "including improvements to [GDI]'s data security systems, future annual audits, [and] . . . identity protection services funded by GDI," actual damages, statutory damages and penalties, pre- and post-judgment interest; an award of attorneys' fees and costs, and all other relief as the Court may deem just and proper. [Compl., ¶ 17; Prayer for Relief.]

5. The Complaint and summons were served on GDI on October 3, 2022. Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Petition as **Exhibit A**.

6. This removal is timely because GDI filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30

days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 56 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

## CAFA JURISDICTION

7. <u>Basis of Original Jurisdiction</u>. This Court has original jurisdiction over this action under CAFA, codified in pertinent at 28 U.S.C. § 1332(d). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than that of the defendant. 28 U.S.C. § 1332(d)(1)-(2)(A); *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 860 (5th Cir. 2010) (per curiam); *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705–06 (5th Cir. 2008).

8. As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), GDI may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than the state(s) of citizenship of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interests and costs. *Aburto v. Midland Credit Mgmt., Inc.*, Civil Action No. 3:08-CV-1473-K, 2009 WL 2252518, at *1 (N.D. Tex. July 27, 2009) (citing 28 U.S.C. § 1332(d)).

## THIS ACTION IS PLED AS A CLASS ACTION

9. CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing

an action to be brought by 1 or more representative persons as a class action.'" *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 274 n.13 (quoting 28 U.S.C. § 1332(d)(1)(B)).

10. Plaintiff brings this action as a "class action" and seeks class certification under Texas law pursuant to Texas Rule of Civil Procedure 42. [Compl., ¶ 82.] Because Texas Rule of Civil Procedure 42 is a "similar State statute . . . authorizing an action to be brought by 1 or more representative persons as a class action," the first CAFA element is satisfied. *See, e.g.*, *Boulanger v. Devlar Energy Mktg., LLC*, CIVIL ACTION NO. 3:15-CV-3032-B, 2015 WL 7076475, at *4 (N.D. Tex. Nov. 13, 2015) (stating that plaintiffs filed their Original Class Action petition "under Texas Rule of Civil Procedure 42—the state analogue to federal rule 23").

**THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS**

11. Plaintiff alleges that, in December 2021, "a malicious actor gained unauthorized access to [GDI]'s computer network and systems." [Compl., ¶ 30.] In particular, Plaintiff claims that GDI determined that the malicious actor(s) gained access to GDI's network and accessed Plaintiff's and putative class members' personal information from December 17, 2021 through December 24, 2021 (the "Data Incident"). [*Id.*]

12. Plaintiff purports to bring this action "on behalf of herself and on behalf of all others similarly situated," including "[a]ll persons who received notice or were otherwise sent notice that they were impacted by [GDI]'s Data [Incident]." [*Id.* at ¶ 82.]

13. Plaintiff asserts that she and putative class members, including "at least 240,673 people," were impacted by the Data Incident. [*Id.* at ¶¶ 2, 86.] In particular, Plaintiff alleges that, "[t]he precise number of Class members is unknown," but includes "approximately 240,673 individuals" who were current or former patients of GDI, all of whom had their "Sensitive

Information" impacted in the Data Incident, including their personally identifiable information ("PII") and protected health information ("PHI"). [*Id.*]

14.     Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals.

## "MINIMAL DIVERSITY" OF CITIZENSHIP EXISTS

15.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014).

16.     <u>GDI's Citizenship</u>. GDI is a limited liability corporation, or LLC. For purposes of diversity jurisdiction, "'the citizenship of a LLC is determined by the citizenship of all of its members[.]'" *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 750 (5th Cir. 2020) (quoting *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008)). Here, GDI is wholly-owned by Gateway Diagnostics, JV, LLC ("GD JV"), a Delaware limited liability corporation, which is comprised of two members, both of which are private corporations for purposes of diversity jurisdiction. *See Strawberry Missionary Baptist Church v. Church Mut. Ins. Co. Found., Inc.*, CIVIL ACTION NO. 3:17–CV–155–SA–JMV, 2017 WL 4678221, at *1 (N.D. Miss. Oct. 17, 2017).

17.     Pursuant to 28 U.S.C. § 1332(c), a corporation is a citizen both of the state in which it is incorporated and the state in which it has its principal place of business. *Caulfield v. Hobby Lobby Stores, Inc.*, CIVIL ACTION NO. 3:21-CV-2146-G, 2021 WL 5357549, at *2 (N.D. Tex. Nov. 17, 2021). A corporation's "principal place of business is 'where the corporation's high level officers direct, control, and coordinate the corporation's activities.'" *Swindol v. Aurora Flight*

*Scis. Corp.*, 805 F.3d 516, 518 (5th Cir. 2015) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)). The so-called "nerve center," the principal place of business normally will be the site of the corporation's headquarters. *Petty v. Great W. Cas. Co.*, No. 3:17-cv-2526-L-BN, 2017 WL 10666518, at *2 (N.D. Tex. Oct. 13, 2017); *Bullard v. MECO Corp.*, CIVIL ACTION NO. 1:15-CV-322, 2015 WL 12938978, at *4 (E.D. Tex. Nov. 16, 2015) (citations omitted).

18. Here, the relevant LLC members are corporations and citizens of Texas and, at a minimum, Delaware, based on the locations of their respective states of incorporation and principal places of business. Accordingly, because GDI is 100% owned by its parent corporation, GD JV, and GD JV's citizenship is determined by its composite members that are, at a minimum, citizens of Texas and Delaware, GDI likewise is a citizen of, at a minimum, Texas and Delaware for purposes of determining CAFA diversity-of-citizenship jurisdiction.

19. <u>Plaintiff's and the Putative Class Members' Citizenship</u>. For diversity purposes, an individual is a "citizen" in the state in which he or she is domiciled. *Pennie v. Obama*, 255 F. Supp. 3d 648, 670 (N.D. Tex. 2017); 28 U.S.C. § 1332(a)(1). A person's "domicile" refers to where he or she "has a fixed residence with the intent to remain there indefinitely." *Id.* "Domicile requires residence in the state and an intent to remain in the state." *Preston v. Tenet Healthcare Indians v. Holyfield*, 485 F.3d 793, 798 (5th Cir. 2007) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). As alleged in the Complaint, Plaintiff "is a resident of Fort Worth, TX." [Compl., ¶ 18.] Accordingly, absent evidence to the contrary, Plaintiff is a citizen of Texas for diversity jurisdiction purposes.

20. Plaintiff also seeks to represent a class (1) that includes "[a]ll persons who received notice or were otherwise sent notice that they were impacted by [GDI]'s Data [Incident]," and (2)

that is not geographically limited. [*See id.* at ¶ 82.] To date, GDI has sent notifications to individuals with addresses in all fifty states as well as Puerto Rico and the District of Columbia.

21. Therefore, the putative class is comprised of individuals who are citizens of states other than Texas and Delaware. And because at least one of the putative class members is a citizen of a state other than the state of citizenship of GDI, "minimal diversity" is established pursuant to CAFA. *See DT Apt. Grp., LP v. CWCapital, LLC*, Civil Action No. 3:12–CV–0437–D, 2012 WL 1555450, at *3 (N.D. Tex. May 3, 2012) ("minimal diversity" for CAFA purposes satisfied when "at least one plaintiff and one defendant are from different states").

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[1]

22. Under CAFA, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied when a complaint does not allege a specific amount of damages. 28 U.S.C. § 1446(c)(2)(B); *1400 FM 1417 LLC v. Certainteed Corp.*, Civil Action No. 4:21-cv-00847, 2022 WL 906192, at *7 (E.D. Tex. Mar. 28, 2022) (citation omitted). "A removing defendant can meet [this] burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015); *Brashear v. Panini Am., Inc.*, Civil Action No. 3:19-CV-201-L, 2020 WL 13413474, at *3 (N.D. Tex. May 21, 2020) (stating that the Court looks at whether it is "facially apparent" that the claims alleged by a plaintiff and the putative class meet the amount in controversy requirement to determine whether it is satisfied). This inquiry is fact-

---

[1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff or putative class members can state or have stated a claim or that they are entitled to damages in any amount. GDI denies liability, denies Plaintiff and/or class members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

intensive, and only requires the removing party to show how the controversy exceeds $5 million based on a "'pleading requirement, not a demand for proof.'" *Berniard*, 481 F. App'x at 862 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)); *see also 1400 FM 1417 LLC*, 2022 WL 906192, at *7 ("Determining the amount in controversy based on the types of damages sought is a fact-specific inquiry, and requires a court to undertake an evaluation of the true nature of the plaintiff's claims.") (citations omitted). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 90. Moreover, "[i]n determining whether the amount in controversy exceeds $5,000,000, Courts must aggregate the claims of all individual class members." *Mealer v. Reg'l Mgmt. Corp.*, CIVIL ACTION NO. 3:16-CV-3343-B, 2017 WL 3421130, at *3 (N.D. Tex. Aug. 8, 2017) (citing 28 U.S.C. § 1332(d)(6)).

23.     Once the removing party has established that the jurisdictional minimum is satisfied, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. *See Brashear*, 2020 WL 13413474, at *4 ("Ordinarily, to justify dismissal for lack of jurisdiction, it must be apparent to a 'legal certainty' from the face of the pleadings or evidence submitted that the plaintiff's claim is for less than the jurisdictional amount.") (citation omitted). Said differently, "it is what the plaintiff is claiming and not what the plaintiff is likely to be awarded that determines whether CAFA's jurisdictional amount requirement is satisfied." *Carter v. Westlex Corp.*, 643 F. App'x 371, 376 (5th Cir. 2016) (citation and internal punctuation marks omitted). Further, the Court may make "common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." *Robertson*, 814 F.3d at 240. "The Legislature intended that the amount in controversy requirement 'be interpreted

expansively, and its provisions read broadly, with a strong preference for federal jurisdiction.'" *Stephenson v. Standard Ins. Co.*, Cv. No. SA:12–CV–01081–DAE, 2013 WL 3146977, at *4 (W.D. Tex. June 18, 2013) (quoting *Rasberry v. Capitol Cty. Mut. Fire Ins. Co.*, 609 F. Supp. 2d 594, 601 (E.D. Tex. 2009)). "If a federal court is uncertain about whether all matters in controversy in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should *err in favor of exercising jurisdiction* over the case." *Id.* (citation and internal punctuation marks omitted) (emphasis in original).

24.  As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000. Specifically, Plaintiff alone "seeks monetary relief over $1,000,000.00," [Compl., ¶ 22], and combined with her other claims and damages' allegations, as well as those of the putative class, it is clear by a preponderance of the evidence that the amount in controversy is over $5,000,000.

25.  <u>Claims for Negligence and Negligence *Per Se*</u>. Plaintiff states claims for negligence and negligence *per se*. [Compl., ¶¶ 92-107 (negligence); ¶¶ 108-26 (two counts of negligence *per se*).]

26.  Plaintiff alleges that GDI "owed a duty to Plaintiff and the Class to exercise reasonable care in safeguarding and protecting their Sensitive Information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties." [*Id.* at ¶ 96.] Plaintiff also claims GDI had a duty to use reasonable security measures to protect personal information under Section 5 of the FTC Act, 15 U.S.C. § 45, and HIPAA, 45 C.F.R. Parts 160 and 164, among other sections. [*Id.* at ¶¶ 109, 117.]

27.  Plaintiff further alleges GDI breached its legally-proscribed duties by, among other things, "[f]ailing to adopt, implement, and maintain reasonable security measures to safeguard

[Plaintiff's and putative Class Members'] Sensitive Information"; "allowing unauthorized access to Plaintiff's and the Class's PHI and PII"; "failing to recognize the Data [Incident] in a timely manner"; and "fail[ing] to comply with industry regulations and exercise reasonable care in safeguarding and protecting Plaintiff's and the Class's PHI and PII." [*Id.* at ¶ 104.]

28. Plaintiff also alleges that GDI breached its duties under the FTC Act and HIPAA "by failing to use reasonable security measures to protect Plaintiff's and the Class's PHI and PII and not complying with industry standards" and "by failing to adhere to and meet the requirements of 45 C.F.R. §§ 164.308 [*et seq.*]," and by failing to timely notify of the Data Incident, respectively. [*Id.* at ¶¶ 110-11, 121-25.]

29. As a result, Plaintiff claims she and the putative class "suffered damages, including, but not limited to, ongoing and imminent threat of identity theft/crimes; out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or fraud; credit, debit, and financial monitoring to prevent and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of [GDI]'s security failures; the value of their time and resources spent mitigating the identity theft and/or fraud; decreased credit scores and ratings; and irrecoverable financial losses due to fraud." [*Id.* at ¶ 106.] As a result, Plaintiff claims she and members of the putative class "are entitled to and demand actual, consequential, and nominal damages." [*Id.* at ¶¶ 107, 114, 126.]

30. Plaintiff in particular also claims that she was further injured when, following the Data Incident, she "was notified by Experian that her personal information was used by an unknown individual who attempted to open a credit card and an account in her name in February 2022." [*Id.* at ¶ 78.] Accordingly, she also claims she suffered actual injury "from having her sensitive information exposed and/or stolen as a result of the Data [Incident] including, but not

limited to: (a) injury arising from actual fraud and theft; (b) entrusting PII and PHI to GDI that she would not have had GDI disclosed it lacked data security practices adequate to safeguard its patients; (c) damages to and diminution in the value of her Sensitive Information . . .; (d) loss of her privacy; (e) continuous imminent and impending injury arising from the increased risk of financial, medical, and identity fraud and theft; and (f) time and expense of her mitigation efforts a as result of the [Data Incident] and subsequent fraud." [*Id.* at ¶ 80.]

31.  As noted above, the Complaint, at a minimum, alleges that Plaintiff has suffered damages "over $1,000,000.00." [*Id.* at ¶ 22.] Plaintiff also seeks injunctive relief and actual, compensatory, consequential, and nominal damages on behalf of herself and putative class members "in an amount to be proven at trial" for the negligence and negligence *per se* claims. [*Id.* at ¶¶ 107, 114, 126; Prayer for Relief.] However, because Plaintiff seeks recovery on behalf of herself and the putative class for, among other things, "out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or fraud" and damages incurred based on the "ongoing and imminent threat of identity theft crimes," [*id.* at ¶ 106], one option for assigning value to these damages is through the cost of credit monitoring. To that end, Plaintiff specifically seeks "credit, debit, and financial monitoring to prevent and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of [GDI]'s [alleged] security failures." [*Id.*] In particular, Plaintiff specifically requests that the Court order GDI to "pay for, not less than three years, identity theft and credit monitoring services for Plaintiff and the Class." [*Id.* at ¶ 140.]

32.  Three main identity-protection agencies—Equifax, IDShield, and Experian— advertise monthly rates for credit-monitoring services ranging from $14.95 to $19.99 per person per month. For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service

restoration when theft occurs, and 24/7 assistance, among other services, for $14.95 per month for one individual.[2] Similarly, both Equifax[3] and Experian[4] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 a month, respectively. Multiplying the cost of providing one month of credit-monitoring services at $14.95 per month (the cheapest of the three products) by the number of alleged putative class members, is approximately $3,598,061.35 (calculated as multiplying 240,673 individuals allegedly impacted in the Data Incident, times 1 month, times $14.95 per month). And multiplying the cost of providing *3 years of credit monitoring* (or 36 months), *i.e.*, the *minimum* amount of additional credit monitoring demanded by Plaintiff in the Complaint, [Compl., ¶ 140], is approximately $129,530,209.00 (calculated as multiplying 240,673 individuals allegedly impacted in the Data Incident, times 36 months, times $14.95 per month), far in excess of the $5,000,000 jurisdictional threshold. Thus, considering Plaintiff's requested relief of "over $1,000,000" in individual damages in addition to the cost of providing 3 years of additional credit monitoring to the entire alleged class demonstrates the amount-in-controversy requirement has been met. And combining Plaintiff's and putative class members' alleged *other* negligence and negligence *per se* damages with their potential credit-monitoring damages adds even more to the total amount in controversy far in excess of $5,000,000.

33. <u>Claim for Violation of the TMPA.</u>  Plaintiff also asserts a claim for violation of the TMPA, Tex. Occ. Code § 159.001 *et seq.*  [Compl., ¶¶ 127-30.] Plaintiff claims GDI "caused the unauthorized disclosure of Plaintiff's and Class Members' PII/PHI" in violation of the TMPA, and

---

[2] *See IDShield Plans & Pricing*, https://www.idshield.com/#plans (last visited Oct. 30, 2022); *see also IDShield Individual*, https://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited Oct. 30, 2022).
[3] *See Equifax*, https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=50235599488  (last visited Oct. 30, 2022).
[4] *See Experian CreditLock*, https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606&k_id (last visited Oct. 30, 2022).

in particular sections 159.002(a)-(c), which provide both that "communications between a physician and a patient, relative to or in connection with any professional services as a physician to the patient . . . are confidential and privileged," and "a person, including a hospital or medical provider, that receives information from a confidential communication or record . . . may not disclose such information except to the extent the disclosure is consistent with the authorized purposes for which the information was first obtained." [*Id.* at ¶¶ 128-29.] As a result, Plaintiff claims GDI "caused the unauthorized disclosure of Plaintiff's and Class Members' PII/PHI, and caused Plaintiff and Class Members to suffer . . . resulting harm and damages[.]" [*Id.* at ¶ 130.] Plaintiff claims, therefore, that she and Class Members are entitled to "injunctive relief and/or to recover their damages under Tex. Occ. Code § 159.009." [*Id.*]

34. Plaintiff's Complaint contains no allegations that would support or suggest the amount in damages she or any of the putative class members purportedly sustained as a result of GDI's alleged violation of the TMPA. However, the TMPA explicitly provides the right for an individual to bring a suit for damages based on a violation of the statute. *See Anderson v. Octapharma Plasma, Inc.*, Civil Action No. 3:19-CV-2311-D, 2020 WL 7245075, at *21 n.31 (N.D. Tex. Dec. 9, 2020) (stating that Tex. Occ. Code Ann. § 159.009(b) "authoriz[es] [a] person aggrieved by violation of [the] statute to bring a cause of action for civil damages"). Therefore, although GDI does not include in the calculation of the total amount in controversy Plaintiff's or putative class members' alleged TMPA damages, GDI underscores these potential damages as further evidence that the $5,000,000 jurisdictional has been met. That is, when Plaintiff's and putative class members' alleged TMPA damages are combined with the damages alleged under the other claims in the Complaint, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

35. <u>Claim for Injunctive Relief</u>.  Plaintiff also states a claim for injunctive relief on behalf of herself and the putative class pursuant to section 65.011 of the Texas Civil Practices and Remedies Code, which, Plaintiff claims, permits the Court to grant a restraining order and/or injunction "when a complaint alleges [a defendant's] actions or omissions will continue to produce great injury" to a plaintiff and the putative class.  [Compl., ¶¶ 137-42.]  To that end, Plaintiff claims she and the class will suffer "irreparable harm" if GDI suffers another data incident, and therefore requests that the Court enter an order requiring GDI to, among other things, "protect all PII and PHI collected through the course of [GDI's] business in accordance with all applicable regulations, industry standards, and federal, state or local laws"; "engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on [GDI]'s systems on a periodic basis, and order[] [GDI] to promptly correct any problems or issues detected by such third-party security auditors"; "run security monitoring, and conduct regular database scanning and securing checks"; and "train and assess its personnel on new or modified security procedures through education, programs, policies, and tests."  [*Id.* at ¶ 140.]

36. Courts in the Fifth Circuit evaluate requests for equitable or injunctive relief based on "the value of the object of the litigation, and the value of that right is measured by the losses that will follow."  *Hacker v. Truist Bank*, SA-22-CV-00886-XR, 2022 WL 4595071, at *2 (W.D. Tex. Sept. 30, 2022) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996)).  "In other words, 'the amount in controversy, in an action for . . . injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented.'"  *Id.* (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)).  Although the Fifth Circuit follows the "plaintiff viewpoint rule" in classic diversity jurisdiction cases, *see 1400 FM 1417 LLC*, 2022 WL 906192, at *10–11, in

removal cases premised on jurisdiction under CAFA, "[t]he amount in controversy may be established 'either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of the relief sought (e.g., damages, injunctive relief, or declaratory relief,'" *Lewis*, 2011 WL 3444312, at *3 (citation omitted); *Rasberry*, 609 F. Supp. 2d at 600 (citation omitted).

37.   Applied here, the aggregate cost to GDI of complying with Plaintiff's request for injunctive relief would potentially include changes to its state and federal regulatory privacy and compliance polices, to, as Plaintiff suggests, "protect all PII and PHI collected through the course of [GDI's] business in accordance with all applicable regulations, industry standards, and federal, state or local laws." [Compl., ¶ 140.] *See, e.g.*, *Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 847–48 (S.D. Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants. *For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000.*" (emphasis added)). It would also undoubtedly cost GDI money to comply with Plaintiff's other requested relief, including to "engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing . . . on [GDI]'s systems on a periodic basis" and "to train and assess [GDI] personnel on new or modified security procedures through education programs, policies, and tests," among other things. [Compl., ¶ 140.]

38.   These amounts, to the extent they exist, combined with the other damages alleged in the Complaint, demonstrate that the amount in controversy is greater than $5,000,000. *See also*

*Thompson v. La. Reg'l Landfill Co.*, 365 F. Supp. 3d 725, 730 (E.D. La. 2019) ("[E]njoining the Landfill to stop operations would cost the Waste Connections Defendants $23,000 in revenues per day . . . Looking from the defendant's viewpoint, assuming an injunction lasted 218 days, which is not an unreasonable assumption, the Waste Connections Defendants' loss would exceed $5 million in revenues. This amount also would satisfy CAFA's amount-in-controversy requirement."). And using the "plaintiff viewpoint point" rule would yield the same result, particularly considering that Plaintiff claims her individual damages, in addition to her request for equitable relief, alone amount to "over $1,000,000.00." [Compl., ¶ 22.] Aggregated with the "relief and benefits that would logically flow from the granting of the [equitable] relief" as to all putative class members, *Rasberry*, 609 F. Supp. 2d at 600, further underscores that the amount in controversy far exceeds the $5,000,000 threshold.

39. <u>Other Claims and Requested Relief</u>. In addition to the claims discussed previously, Plaintiff also states a claim for declaratory judgment, [Compl., ¶¶ 131-36], and also seeks further relief in the form of "[a]n award of damages in an amount to be determined at trial or by this Court"; an "award of statutory interest and penalties"; "[a]n award of costs and attorneys' fees"; pre- and post-judgment interest "at the maximum amount allowed by law"; and "[s]uch other and relief th[e] [C]ourt may deem just and proper," [*id.* at Prayer for Relief(c), (e)-(i)].

40. No allegations in the Complaint allow GDI to calculate with specificity the amount of these damages and relief. However, GDI underscores these allegations to the Court as further evidence that the amount in controversy exceeds the $5,000,000, as already established above. *See, e.g.*, *Lewis v. Auto Club Family Ins. Co.*, Civil Action No. 11–169–D–M2, 2011 WL 3444312, at *5 (M.D. La. July 7, 2011) (stating that "the putative class could potentially receive $5,495,000 in penalties under La. R.S. 22:1973 (1,099 claims x $5,000 in penalties per claim = $5,495,000"

and that "[t]hat figure alone satisfie[d] the $5,000,000 minimum amount in controversy required for CAFA jurisdiction . . . Accordingly, the CAFA jurisdictional minimum [wa]s satisfied based solely upon potential penalties in this case, and the undersigned need not even consider the parties' respective arguments concerning the amount of possible attorney's fees or injunctive relief compliance costs that could be awarded in th[e] suit"); *McPeters v. LexisNexis*, Civil Action No. H–11–2056, 2011 WL 2434088, at *2 (S.D. Tex. June 10, 2011) (stating that defendant's charges "would still exceed $5 million" even if not all charges could be considered in the amount of controversy, in particular because plaintiff requested treble damages, exemplary damages, and attorney's fees" which, when included, "far exceed[ed] the jurisdictional minimum").

41. Accordingly, because the case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, GDI has properly removed the State Court Action to this Court.

## NOTICE

42. As required by 28 U.S.C. § 1446(d), GDI is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of the Notice of Removal with the Clerk of the Tarrant County District Court.

WHEREFORE, Defendant Gateway Diagnostic Imaging, LLC hereby removes the State Court Action from the District Court of Tarrant County, Texas, to the United States District Court for the Northern District of Texas.

Dated: October 31, 2022                    Respectfully submitted,

**GATEWAY DIAGNOSTIC IMAGING, LLC**

By: /s/    *Tamara D. Baggett*

Tamara D. Baggett (SBN # 24058573)
**BAKER & HOSTETLER LLP**
2850 North Harwood Street, Suite 1100
Dallas, TX  75201-2640
Tel: (214) 210-1200
Fax: (214) 210-1201
Email: tbaggett@bakerlaw.com

Casie D. Collignon (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO  80202
Tel: (303) 861-0600
Fax: (303) 861-7805
Email: ccollignon@bakerlaw.com

*Attorneys for Defendant Gateway Diagnostic Imaging, LLC*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that she caused a true copy of the foregoing Notice of Removal to be served on Plaintiff via email on October 31, 2022, to:

Ryan L. Thompson
Texas Bar No. 24046969
rthompson@triallawyers.com
Ryan H. Anderson
Texas Bar No. 24059380
randerson@triallawyers.com
**Thompson Law LLP**
3300 Oak Lawn Ave., 3rd Floor
Dallas, Texas 75219
Phone: (214) 755-7777
Fax: (214) 716-0116

Christopher D. Jennings
Nathan I. Reiter IIII
**THE JOHNSON FIRM**
610 President Clinton Ave., Suite 300
Little Rock, AR 72201
Phone: (501) 372-1300
chris@yourattorney.com
nath@yourattorney.com

Brian C. Gudmundson
Jason P. Johnston
Michael J. Laird
Rachel K. Tack
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone : (612) 341-0400
Fax: (612) 341-0844
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreedc.com

    /s/ *Tamara D. Baggett*